SANDRA P. SUAREZ, as Guardian Ad Litem for ANDERSON LUKE SUAREZ, and ALEX SUAREZ and SANDRA P. SUAREZ, Individually, Plaintiffs v. JAMES WILLIAM WOTRING, JR., M.D., SCOTT THOMAS CHATHAM, M.D., and CATAWBA WOMEN'S CENTER, P.A., Defendants

No. COA02-108

(Filed 31 December 2002)

## 1. Evidence— hearsay—deposition testimony—available witness—Rule 32 exception

The trial court did not err in a medical malpractice case by admitting under N.C.G.S. § 1A-1, Rule 32(a) the deposition testimony of three witnesses without establishing that the deponents were unavailable within the meaning of N.C.G.S. § 8C-1, Rule 804(a), because: (1) Rule 32(a) creates an independent exception to the hearsay rule and the proponent of that witness's deposition testimony need only show that the party against whom the deposition is offered was present or represented at the deposition or had reasonable notice thereof, and that one of the enumerated purposes of Rule 32 is met; (2) plaintiffs were present and represented at the taking of the depositions; and (3) Rule 32 allows the deposition of a person called as a witness to be used as substantive evidence by any party adverse to the party who called the deponent as a witness, and the pertinent witnesses in this case were all called by plaintiffs thus allowing defendants to use any part or all of the depositions of these witnesses.

**2. Evidence— hearsay—deposition testimony—available witness—Rule 32 exception**

Although the trial court erred in a medical malpractice case by allowing the admission of selected portions of the deposition testimony of an available expert witness without showing that a stated purpose under Rule 32(a) was met, the error was harmless because plaintiffs cannot show prejudice in the admission of this deposition testimony.

**3. Discovery— scheduling order—subject of expert testimony**

Even assuming the trial court erred in a medical malpractice case by allowing defendants to elicit expert testimony regarding the standard of care required of defendants and whether defendants complied with that standard when defendants only provided on their discovery scheduling order that the pertinent expert would testify that shoulder dystocia can be an obstetrical emergency, the error was harmless because: (1) plaintiffs have failed to show how they were prejudiced by the admission of the expert's opinion when it was cumulative and corroborative of substantially similar testimony given by another of defendants' experts; and (2) plaintiffs have failed to show how introduction of this testimony influenced the jury's verdict.

**4. Trials— motion for new trial—accident or surprise—sympathy**

The trial court did not abuse its discretion in a medical malpractice case by denying plaintiffs' motion for a new trial against defendant doctor based on alleged accident or surprise which ordinary prudence could not have guarded against caused by the jury being informed near the close of defendants' case that this defendant's mother had died the preceding afternoon, because: (1) the jury was instructed to perform its duty fairly and objectively and without bias, sympathy, or partiality toward any party and not to be swayed by pity, sympathy, partiality, or public opinion; and (2) there is no evidence that the jury disregarded the trial court's instruction and ignored its solemn duty to fairly and impartially decide the case.

**5. Trials— motion for new trial—sufficiency of evidence**

The trial court did not abuse its discretion in a medical malpractice case by denying plaintiffs' motion for a new trial against defendant doctor based on the jury's verdict allegedly being contrary to the evidence at trial, because the jury was pre-

SUAREZ v. WOTRING

[155 N.C. App. 20 (2002)]

sented with all of the evidence, was instructed properly on the law, and made its decision accordingly.

Chief Judge EAGLES concurring.

Appeal by plaintiffs from judgment entered 27 March 2001 and order entered 19 July 2001 by Judge L. Oliver Noble in Catawba County Superior Court. Heard in the Court of Appeals 14 October 2002.

*Simpson Kuehnert Vinay & Bellas, P.A., by Eric R. Bellas and Daniel A. Kuehnert, for plaintiff-appellants.*

*Dameron, Burgin & Parker, P.A., by Charles E. Burgin and Phillip T. Jackson, for defendant-appellees.*

THOMAS, Judge.

Plaintiffs, Sandra P. Suarez, as guardian ad litem for Anderson Luke Suarez and in her individual capacity, and Alex Suarez, appeal the trial court's entry of judgment on the jury's verdict in favor of defendants in this medical negligence case. Plaintiffs also appeal the trial court's denial of their motion for a new trial as to defendant James William Wotring, M.D.

Plaintiffs contend the trial court committed reversible error by (1) allowing defendants to read into the record selected portions of the depositions of three of plaintiffs' expert witnesses after they had been released from subpoena with defendants' consent following their testimony at trial; (2) allowing defendants to read into the record the deposition testimony of one of plaintiffs' designated expert witnesses who did not testify at trial, without finding the witness unavailable to testify; (3) allowing testimony from one of defendants' expert witnesses concerning the standard of care and whether defendants complied with the standard of care, when defendants' designation of expert witnesses did not state the expert would so testify; (4) denying their motion for a new trial based on the jury being informed prior to the close of defendants' case that Dr. Wotring's mother had died the previous evening; and (5) denying their motion for a new trial based on the evidence being insufficient to support the jury's verdict. For the reasons herein, we affirm the judgment and order of the trial court.

On 15 October 1998, plaintiffs filed the instant complaint alleging defendants, James William Wotring, M.D., Scott Thomas Chatham,

M.D., and Catawba Women's Center, P.A., negligently caused injuries and other damages sustained by Anderson Suarez during his natural birth delivery. Defendants denied that their actions prior to and during the birth violated the applicable standard of care.

Plaintiffs' evidence at trial tends to show that Sandra and Alex Suarez are the parents of two children. Sandra became pregnant with their first child in September 1989. She received prenatal care at defendant Catawba Women's Center and the delivery of her first child was accomplished with the aid of doctors and other employees at the Women's Center. The delivery, however, required an episiotomy and the use of forceps.

In February 1995, Sandra became pregnant with Anderson Suarez. At the time, she weighed 232 pounds and was five feet six inches in height. During her prenatal care at the Women's Center, she continuously reminded defendants that the birth of her first child was difficult. Sandra eventually began experiencing numbness in her leg, which she attributed to pressure being caused by the baby. She expressed her concerns to defendants that the baby was too large to deliver vaginally if she went to term.

On 6 October 1995, four days prior to the due date, Dr. Chatham performed an ultrasound which revealed the baby weighed approximately nine pounds. Sandra reminded him about the difficulties she experienced with her first delivery and asked if he would consider inducing labor. Chatham told her not to worry about delivering the baby vaginally.

In the early morning hours of 18 October 1995, Sandra began experiencing contractions and telephoned Dr. Wotring. He did not answer. Sandra left three messages, none of which were returned. When the Women's Center opened that morning, she called and was told to come in. Sandra was initially examined by Chatham and told to return home because Wotring would not send her to the hospital until she was dilated four centimeters and the contractions occurred every four minutes. Upon her insistence, Chatham reluctantly sent her to Catawba Memorial Hospital, where she was admitted around noon.

At the hospital, Sandra received an epidural, numbing her below the waist. After breaking Sandra's water, Wotring decided to proceed with a vaginal delivery, but to artificially shorten the second stage. Wotring attached a vacuum extractor suction unit to the baby's head and delivered the head on the fourth contraction.

However, delivery of the rest of the baby's body proved extremely difficult. Because the baby was so large and Sandra's pelvis was borderline and her symphysis flat, there was "shoulder dystocia" involving the baby's left shoulder—the position of the shoulder prevented the body from proceeding down the birth canal.

Before performing any maneuvers to relieve the shoulder dystocia, Wotring applied pressure to Anderson's head in an attempt to deliver the rest of the body. According to Alex Suarez, who was present in the delivery room, Wotring had his fingers in the sockets of the baby's eyes and was leaning back with his full body weight trying to deliver the baby. When this proved unsuccessful, Wotring resorted to the McRoberts maneuver, a recognized method to relieve shoulder dystocia which does not involve manipulation of or pressure on the baby's head. Anderson was delivered during the second attempt at the McRoberts maneuver. He weighed nine pounds, eleven ounces.

At birth, Anderson suffered from numerous injuries and currently suffers from Erb's Palsy, a permanent condition characterized by limited use of his left arm. The cause is severe damage to the nerves running between Anderson's left arm and spinal cord resulting from the nerves having been physically stretched to the breaking point. According to plaintiffs, the condition resulted from a brachial plexus nerve root injury suffered at Anderson's birth due to excessive lateral traction applied to his head during delivery. Plaintiffs' experts testified that defendants' care prior to and during the delivery of Anderson, particularly Wotring's use of excessive force on Anderson's head, was not in accordance with the standard of practice of members of the same health care profession with similar training and experience situated in the same or similar communities. *See* N.C. Gen. Stat. § 90-21.12 (2001). Defendants' experts testified that the standard of care was not violated.

Following the trial, the jury returned the following verdict:

1. Was Anderson Luke Suarez injured as a result of the negligence of James William Wotring, M.D.?

ANSWER: NO

2. Was Anderson Luke Suarez injured as a result of the negligence of Scott Thomas Chatham, M.D.?

ANSWER: NO

The trial court subsequently entered judgment consistent with the jury's verdict.

Plaintiffs filed a timely Rule 59 motion for a new trial as to Wotring alleging (1) irregularities by which they were prevented from having a fair trial, (2) accident or surprise which ordinary prudence could not have guarded against, (3) insufficiency of the evidence to justify the verdict, and (4) other errors in law entitling them to a new trial.

Plaintiffs' motion was denied. They gave timely notice of appeal.

During plaintiffs' case-in-chief, Dr. Robert Allen, their bio-medical engineering expert, testified regarding the forces exerted during a routine delivery, and the forces necessary to cause the injuries suffered by Anderson. Allen offered his opinion that approximately ten pounds of force is exerted on a baby in a normal delivery, whereas in shoulder dystocia cases, the average is twenty-two pounds. Allen further opined that, based on Anderson's injuries, at least thirty-five pounds of force were exerted on Anderson's head during delivery. Allen was cross-examined at trial by defendants, and then released from subpoena with defendants' consent.

After plaintiffs rested, defense counsel stated his intention to read into evidence a portion of Allen's pretrial deposition. Plaintiffs objected. The trial court overruled the objection and defense counsel read part of the deposition to the jury.

In addition to the pretrial deposition of Allen, defense counsel also read into the record portions of the pretrial depositions of Dr. Andrew Koman, Anderson's treating orthopaedic surgeon, and Dr. Stuart Edelberg, both of whom had likewise testified in plaintiffs' case-in-chief and been released from subpoena with defendants' consent.

[1] Plaintiffs contend the depositions of Allen, Koman and Edelberg should not have been read into the record because defendants did not establish that the deponents were "unavailable" within the meaning of Rule 804(a) of the North Carolina Rules of Evidence. Rule 804 permits the admission of certain statements, including deposition testimony, which would otherwise be hearsay, if the declarant is "unavailable." Defendants, meanwhile, maintain the depositions were admissible under Rule 32 of the North Carolina Rules of Civil Procedure without a showing of "unavailability" under Rule 804(a).

Rule 32(a) of the North Carolina Rules of Civil Procedure states, in pertinent part:

(a) *Use of depositions.*—At the trial or upon the hearing of a motion or an interlocutory proceeding or upon a hearing before a referee, any part or all of a deposition, *so far as admissible under the rules of evidence applied as though the witness were then present and testifying,* may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof, in accordance with any of the following provisions:

. . . .

N.C.R. Civ. P. 32(a) (2001) (emphasis added). The above-italicized language in Rule 32(a) creates an exception to the hearsay rule. The Comment to the 1975 Amendment to Rule 32(a), which added the language, states:

A change is made in new Rule 32(a), whereby it is made clear that the rules of evidence are to be applied to depositions offered at trial as though the deponent were then present and testifying at trial. This eliminates the possibility of certain technical hearsay objections which are based, not on the contents of deponent's testimony, but on his absence from court. . . .

N.C.R. Civ. P. 32(a), comment.

Federal courts applying Federal Rule of Civil Procedure 32(a), the companion provision to N.C.R. Civ. P. 32(a), have consistently held that it creates an independent exception to the hearsay rule. *See Angelo v. Armstrong World Industries, Inc.,* 11 F.3d 957, 962-63 (10th Cir. 1993); *Southern Indiana Broadcasting, Ltd. v. F.C.C.,* 935 F.2d 1340, 1342 (D.C. Cir. 1991); *U.S. v. Vespe,* 868 F.2d 1328, 1339 (3d Cir. 1989); *Carey v. Bahama Cruise Lines,* 864 F.2d 201, 204 (1st. Cir. 1988). Under the federal rules and applicable case law, the proponent of deposition testimony has the burden of proving the deposition is admissible under Fed.R.Civ.P. 32(a) *or* Fed.R.Evid. 804(b)(1). *Angelo,* 11 F.3d at 963.

This interpretation is reinforced by subsection (b) of both Federal Rule 32 and North Carolina Rule 32, which states that "objection may be made at the trial or hearing to receiving in evidence any deposition or part thereof for any reason which would require the

exclusion of the evidence if the witness were then present and testifying." N.C.R. Civ. P. 32(b); Fed.R.Civ.P. 32(b).

Nonetheless, plaintiffs argue that deposition testimony is not admissible, for any purpose, unless the proponent proves admissibility under *both* Rule 32 of the Rules of Civil Procedure and Rule 804 of the Rules of Evidence. Since Allen, Koman and Edelberg all testified at trial and were released from subpoena with defendants' consent, plaintiffs maintain they were not "unavailable" within the meaning of Rule 804(a) and, therefore, their deposition testimony was inadmissible.

Plaintiffs rely on our Supreme Court's decision in *Investors Title Insurance Co. v. Herzig*, 330 N.C. 681, 413 S.E.2d 268 (1992) and this Court's decision in *Pleasant Valley Promenade v. Lechmere, Inc.*, 120 N.C. App. 650, 464 S.E.2d 47 (1995), to support their interpretation.

In both *Investors Title* and *Pleasant Valley*, the trial court found the witnesses whose deposition testimonies were offered to be "unavailable" under Rule 804(a). The Supreme Court concluded in *Investors Title* that (1) the "unavailability" test in the former testimony exception to the hearsay rule was met, and (2) the party against whom the deposition was offered had an opportunity and similar motive to develop the offered testimony by cross-examination at the deposition, thus meeting the requirements of Rule 804(b)(1). *Investors* Title, 330 N.C. at 691-92, 413 S.E.2d at 273-74; *see also* N.C.R. Evid. 804(b)(1) (an unavailable witness's deposition is admissible at trial "if the party against whom the testimony is . . . offered . . . had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination"). Accordingly, the Court held the challenged deposition testimony was properly admitted.

In *Pleasant Valley*, the witness was "unavailable" under Rule 804(a) but the Court concluded the party against whom the deposition was offered at trial did not have a motive to develop the deposition testimony because, at the time of the deposition, no damages claim was pending against that party. *Pleasant Valley*, 120 N.C. App. at 659, 464 S.E.2d at 55. Accordingly, the Court held the deposition testimony to have been properly excluded.

Unlike the witnesses in *Investors Title* and *Pleasant Valley*, Allen, Koman, and Edelberg were all available to testify at trial. In fact, they all testified before being released from subpoena with defendants' consent. Thus, *Investors Title* and *Pleasant Valley* are

not binding precedent on the issue presented here—whether the deposition of a witness who is available to testify is admissible under Rule 32(a).

Having reviewed the text of Rule 32(a) of the North Carolina Rules of Civil Procedure, the comment to the 1975 amendment to Rule 32(a), and applicable case law interpreting the companion federal rule, we hold that the deposition of an available witness is admissible under Rule 32(a), so long as one of the enumerated purposes set forth in Rule 32(a) have been met. When a witness is available, Rule 32(a) creates an independent exception to the hearsay rule and the proponent of that witness's deposition testimony need only show that (1) the party against whom the deposition is offered was present or represented at the deposition or had reasonable notice thereof, and (2) one of the enumerated purposes of Rule 32 is met. N.C.R. Civ. P. 32(a).

Rule 32 states as one of its purposes:

(2) The deposition of a person called as a witness may also be used as substantive evidence by any party adverse to the party who called the deponent as a witness . . . .

N.C.R.Civ. P. 32(a)(2).

Here, Allen, Koman, and Edelberg were all called as witnesses by plaintiffs. Defendants, in turn, are "adverse to the party who called the deponent as a witness." Plaintiffs were present and represented at the taking of the depositions thereby meeting the requirement found in the introductory paragraph of Rule 32(a). Accordingly, Rule 32(a) permitted defendants to use any part or all of the depositions of Allen, Koman and Edelberg, who were available, as substantive evidence. The trial court did not commit error.

[2] Plaintiffs next contend the trial court erred in allowing the admission of selected portions of the deposition testimony of Dr. Ronald Foote.

During discovery, plaintiffs designated Foote as an expert witness who was expected to testify that defendants failed to comply with the applicable standard of care in their delivery of Anderson Suarez. Foote's deposition was subsequently taken by defendants' counsel.

However, plaintiffs did not call Foote to testify during their case-in-chief. After plaintiffs rested, defense counsel, over objection, read

excerpts from Foote's deposition to the jury. Plaintiffs argue this was error because the trial court made no finding that Foote was "unavailable" within the meaning of Rule 804.

We agree with plaintiffs that the trial court erred in allowing the admission of Foote's deposition testimony. However, we do so for a reason different than the one cited by plaintiffs.

*Investors Title* and *Pleasant Valley* hold: "To be admissible at trial, the deposition of an unavailable non-party witness must meet the requirements of both N.C.R. Civ. P. 32 and N.C.R. Evid. 804(b)(1)." *Pleasant Valley*, 120 N.C. App. at 659, 464 S.E.2d at 55 (citing *Investors Title*, 330 N.C. at 690-91, 413 S.E.2d at 273 (1992). In the instant case, we hold that the deposition of an available witness is admissible under Rule 32, so long as one of the stated purposes set forth in Rule 32(a)(1)-(5) has been met. Therefore, regardless of whether a witness is available or unavailable, one of the stated purposes in Rule 32(a) must be met before that witness's deposition testimony can be admitted for any purpose. *See Warren v. City of Asheville*, 74 N.C. App. 402, 409, 328 S.E.2d 859, 864 (1985) ("[a]ll or part of a deposition may be used only if the provisions of G.S. 1A-1, Rule 32(a) are met."); *Nytco Leasing v. Southeastern Motels*, 40 N.C. App. 120, 252 S.E.2d 826 (1979).

Defendants maintain the reading of Foote's deposition was permitted under Rule 32(a)(4), which states:

(4) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds: . . . that the witness is at a greater distance than 100 miles from the place of trial or hearing . . .; or that the party offering the deposition has been unable to procure the attendance of the witness by subpoena . . . .

N.C.R. Civ. P. 32(a)(4).

However, the trial transcript does not contain a finding by the trial court that Foote was more than 100 miles away from the place of the trial or that defendants had been unable to procure his attendance by subpoeana. The record does show the trial court was informed by defense counsel that Foote resided in Buffalo, New York. Following this declaration, a bench conference was held, the contents of which were not transcribed. The trial court then overruled plaintiffs' objection and Foote's deposition was read to the jury. Although the trial court was informed that Foote lived in Buffalo, which is well over 100

miles from Catawba County, it made no findings to support its admission of Foote's deposition. Absent any findings, we refuse to speculate as to the grounds for the trial court's ruling. Thus, we conclude the trial court erred in allowing the reading of Foote's deposition to the jury.

However, an error in the admission of evidence is not grounds for granting a new trial or setting aside a verdict unless the admission amounts to the denial of a substantial right. *See* N.C.R. Civ. P. 61 (2001); N.C.R. Evid. 103(a) (2001). The burden is on the appellant to not only show error, but also to show that he was prejudiced and a different result would have likely ensued had the error not occurred. *Warren*, 74 N.C. App. at 409, 328 S.E.2d at 864; *Hasty v. Turner*, 53 N.C. App. 746, 750, 281 S.E.2d 728, 730-31 (1981). The erroneous admission of testimony will not be held prejudicial when its import is abundantly established by other competent testimony, or the testimony is merely cumulative or corroborative. *Warren*, 74 N.C. App. at 409, 328 S.E.2d at 864.

The portion of Foote's deposition read to the jury indicted the following: (1) shoulder dystocia is an unpredictable event; (2) in Dr. Foote's opinion, the maneuvers documented by Dr. Wotring as having been used in the delivery of Anderson Suarez did not violate the standard of care; and (3) if Wotring delivered Anderson with the force described by Alex Suarez, he violated the standard of care.

Plaintiffs and defendants both elicited other expert evidence that shoulder dystocia is an unpredictable event. Dr. Donald Horner, one of plaintiffs' experts, and Dr. Joseph Ernest, defendants' obstetrical expert, both testified to this fact. Ernest also opined that, based on the information documented by Wotring in Anderson's medical charts, Wotring performed the right maneuvers at the right time. Thus, the reading of Foote's deposition served only to corroborate competent evidence already before the jury as to issues (1) and (2) above. In addition, Foote's opinion that Wotring violated the standard of care if he used the force described by Alex Suarez is supportive of plaintiffs' case and in no way prejudicial. Accordingly, plaintiffs cannot show prejudice in the admission of Foote's deposition testimony, and we hold the admission of the evidence to be harmless error.

[3] Plaintiffs next contend the trial court erred in allowing the testimony of Dr. Gary Hankins regarding the standard of care required of defendants and whether they complied with that standard.

Prior to trial, the court entered a discovery scheduling order (DSO) pursuant to Rule 26(f1) of the North Carolina Rules of Civil Procedure. The DSO required defendants to designate all expert witnesses they intended to call to render expert opinions at trial, and provide the experts' curriculum vitae (CV) and the information set forth in Rule 26(b)(4) of the Rules of Civil Procedure. Rule 26(b)(4) provides that a party may be required to identify each expert witness the party anticipates calling at trial, "the subject matter on which the expert is expected to testify, . . . the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion." N.C.R. Civ. P. 26(b)(4) (2001).

Defendants subsequently filed their designation of expert witnesses which identified Hankins and stated "he is expected to testify that shoulder dystocia can be, as was in this case, an obstetrical emergency." Plaintiffs had no disagreement with this opinion, and because Hankins was not expected to testify regarding the applicable standard of care, plaintiffs elected not to depose him.

Defendants then elicited at trial Hankins' opinion that Wotring had provided treatment to Sandra and Anderson Suarez in accordance with the standard of care. Plaintiffs objected and now argue admission of such evidence was erroneous because it violated the discovery scheduling order.

However, plaintiffs have failed to show how they were prejudiced by the admission of Hankins' opinion. His testimony was cumulative and corroborative of substantially similar testimony given by defendants' other expert, Dr. Ernest. Plaintiffs have failed to show how introduction of Hankins' testimony influenced the jury's verdict. Accordingly, assuming the trial court erred, we hold the error was harmless. *See* N.C.R. Civ. P. 61.

[4] Plaintiffs next contend the trial court erred in denying their motion for a new trial against defendant Wotring based on "accident or surprise which ordinary prudence could not have guarded against" caused by the jury being informed near the close of defendants' case that Wotring's mother had died the preceding afternoon. We find no manifest abuse of discretion on the trial court's part.

The standard of appellate review for discretionary rulings granting or denying motions for new trials was set forth by the Supreme Court in *Campbell v. Pitt County Memorial Hospital*, 321 N.C. 260, 362 S.E.2d 273 (1987), as follows:

Appellate review "is strictly limited to the determination of whether the record affirmatively demonstrates a manifest abuse of discretion by the judge." *Worthington v. Bynum*, 305 N.C. 478, 482, 290 S.E.2d 599, 602 (1982). The trial court's discretion is " 'practically unlimited.' " *Id.*, 290 S.E.2d at 603 (quoting from *Settee v. Electric Ry.*, 170 N.C. 365, 367, 86 S.E. 1050, 1051 (1915)). A *"discretionary* order pursuant to [N.C.]G.S. 1A-1, Rule 59 for or against a new trial upon *any* ground may be reversed on appeal only in those exceptional cases where an abuse of discretion is clearly shown." *Id.* at 484, 290 S.E.2d at 603. "[A] manifest abuse of discretion must be made to appear from the record as a whole with the party alleging the existence of an abuse bearing that heavy burden of proof." *Id.* at 484-85, 290 S.E.2d at 604. "[A]n appellate court should not disturb a discretionary Rule 59 order unless it is reasonably convinced by the cold record that the trial judge's ruling probably amounted to a substantial miscarriage of justice." *Id.* at 487, 290 S.E.2d at 605.

*Id.* at 264-65, 362 S.E.2d at 275-76 (emphasis and alterations in original), *quoted in Anderson v. Hollifield*, 345 N.C. 480, 483, 480 S.E.2d 661, 663 (1997).

On the morning of 14 March 2001, the last day of testimony in this case, court reconvened and Wotring returned to the stand for re-cross examination. During re-cross, plaintiffs' counsel asked Wotring if he had a good night's sleep and Wotring answered he did not.

Following re-cross, defense counsel returned for a second redirect examination of Wotring. At the conclusion of this redirect, the following exchange occurred:

Q: Doctor, I didn't hear what you said when Mr Britt asked you if you had a good night. Is that what he asked you?

A: Yeah.

Q: Well, what did you say? I didn't hear the answer.

A: I told him I did not.

Q: Why did you not have a good night?

A: Well, unfortunately, my mother passed away yesterday afternoon, and we were up most of the night making arrangements. And it was—she was ninety, but—and not unexpected, but it was still a shock.

Plaintiffs argue defense counsel elicited the testimony regarding the death of Wotring's mother in a manner designed for maximum effect and the result of such testimony was that everyone in the courtroom, including the jurors, "felt profound sympathy for Dr. Wotring." Plaintiffs maintain such a reaction was natural and unavoidable and prevented plaintiffs from having a fair trial. We disagree.

The jury was instructed "to perform [its] duty fairly and objectively and without bias, sympathy or partiality toward any party" and "not to be swayed by pity, sympathy, partiality or public opinion." Absent some evidence in the record, we cannot assume the jury here disregarded the trial court's instruction and ignored its solemn duty to fairly and impartially decide the case. Therefore, the trial court's ruling denying plaintiffs' motion for a new trial on this ground did not amount to a substantial miscarriage of justice or a manifest abuse of discretion.

[5] In their final assignment of error, plaintiffs contend the trial court erred in denying their motion for a new trial against Wotring because the jury's verdict was contrary to the uncontradicted evidence at trial. We disagree.

"Like any other ruling left to the discretion of a trial court, the trial court's appraisal of the evidence and its ruling on whether a new trial is warranted due to the insufficiency of the evidence is *not* to be reviewed on appeal as presenting a question of law." *In re Buck*, 350 N.C. 621, 625, 516 S.E.2d 858, 860-61 (1999) (emphasis in original). It is well-settled that a trial judge's discretionary ruling either granting or denying a motion for a new trial is strictly limited to the determination of whether the record affirmatively demonstrates a manifest abuse of discretion. *Worthington v. Bynum*, 305 N.C. 478, 482, 290 S.E.2d 599, 602 (1982).

> It is impossible to place precise boundaries on the trial court's exercise of its discretion to grant a new trial. However, we emphasize that this power must be used with *great care and exceeding reluctance*. This is so because the exercise of this discretion sets aside a jury verdict and, therefore, will always have some tendency to diminish the fundamental right to trial by jury in civil cases which is guaranteed by our Constitution.

*In re Buck*, 350 N.C. at 626, 516 S.E.2d at 861 (emphasis in original).

Here, plaintiffs argue that every medical expert witness testified that the standard of care required Wotring to attempt a variety of dif-

ferent maneuvers to relieve Anderson's shoulder dystocia *before* applying excessive traction to Anderson's head. According to plaintiffs, the only witness who testified to the details of Anderson's delivery was Alex Suarez, who stated that Wotring panicked when Anderson's shoulder got stuck and immediately starting pulling hard on Anderson's head. Thus, plaintiffs contend the uncontradicted evidence shows that Wotring violated the standard of care.

However, defendants introduced into evidence Wotring's medical notes detailing the steps he took to effectuate the delivery of Anderson. Two of defendants' expert witnesses testified that Wotring's actions, as documented in his notes, did not violate the standard of care.

It is the jury's function to weigh the evidence and to determine the credibility of witnesses. In this case, the jury was presented with all of the evidence, was instructed properly on the law, and made its decision accordingly. We cannot conclude from the record that the trial court's denial of plaintiffs' motion for a new trial based on insufficiency of the evidence to support the verdict probably amounted to a substantial miscarriage of justice.

For the reasons stated herein, we conclude the trial court did not err in entering judgment on the jury's verdict and in denying plaintiffs' motion for a new trial as to defendant Wotring.

Affirmed.

Judge TYSON concurs.

Chief Judge EAGLES concurs in a separate opinion.

EAGLES, Chief Judge, concurring.

I concur in the result reached by the majority. However, I write separately to express my uneasiness and disagreement with the extensive use of a witness's deposition testimony to impeach the witness after the witness testifies in person, has been examined in person and has been excused.

Here, defendants used deposition testimony to impeach plaintiff's expert witnesses after those same witnesses had been present in court, testified in person, and defendants had the opportunity to cross-examine them on the witness stand. Defendants agreed to excuse those witnesses and allowed the witnesses to leave the court-

room. Relying upon Rule 32(a) of the North Carolina Rules of Civil Procedure, defendants then proceeded to read the witnesses' deposition testimony into the record in order to impeach their live testimony. The depositions were read into evidence without the witnesses' presence or ability to explain their previous deposition testimony. This practice smacks of trial by ambush. Use of deposition testimony without the deponent's presence is technically allowed by N.C. R. Civ. P. 32 and N.C. R. Evid. 804. However, this practice impairs the fact-finder's ability to perform its traditional role of sorting truth from fiction by judging witness credibility during live testimony at trial. Although the parties in this case behaved in strict compliance with the rules, I believe that use of a witness's deposition testimony when that witness has been excused should be discouraged. The rules which appear to authorize this practice, N.C. R. Civ. P. 32 and N.C. R. Evid. 804, should be revisited by the General Assembly.