STATE OF NORTH CAROLINA,
v.
RONDALL ALLEN SPANN.
No. COA09-32.
Court of Appeals of North Carolina.
Filed: September 1, 2009.
This case not for publication
Attorney General Roy Cooper, by Assistant Attorney General Laura E. Crumpler, for the State.
Glenn Gerding for Defendant.
STEPHENS, Judge.

I. Procedural History
At the 9 June 2008 criminal session of superior court in Burke County, Defendant Rondall Allen Spann was tried by a jury on one count of first degree statutory rape, two counts of first degree statutory sex offense, and two counts of indecent liberties with a child. The jury found Defendant guilty on all charges. The trial court entered judgment upon the jury's verdict, sentencing Defendant to the following: an active sentence of 288 to 355 months in prison for the first degree rape conviction; a consecutive sentence of 288 to 355 months in prison for one first degree statutory sex offense conviction; a concurrent sentence of 288 to 355 months in prison for the remaining first degree statutory sex offense conviction; and two concurrent sentences of 19 to 23 months in prison for the indecent liberties convictions. From that judgment, Defendant appeals.

II. Evidence
In the summer of 2005, eight-year-old BW and her sister seven-year-old CW were living with their grandparents in a mobile home in Burke County, North Carolina.[1] BW testified to the following: Defendant would visit the home and would go with BW and CW into their bedroom and close the door while their grandparents were in the living room. Defendant touched her privates with "his hand and his privates[,]" Defendant touched his private with her private, and Defendant "stuck it in" and "juice" came out of his private. She would try to scream for help but Defendant would hold her mouth. When her grandmother would try to come into the girls' room, Defendant would say, "`Everything's all right.'" BW told her grandparents "about ten times" about the abuse, but they did not believe her. The abuse started when she was three years old. Defendant did the same things to CW, including putting his hand in CW's private part and also putting his private "in her private part."
CW testified to the following: Defendant would do "nasty things" to her and BW. Specifically, Defendant did "sex" and "humping" and would put his penis in her private part. When her grandparents came to the door to ask if everything was okay, Defendant would respond, "`Yes.'" This started when CW was three years old.
Elizabeth Browning, a sexual assault nurse examiner employed by South Mountain Children and Family Services, was tendered by the State as an expert in the physical examination of sexually abused children. Browning interviewed and examined BW and CW on 9 November 2005 at the Child Advocacy Center in Burke County. BW told Browning that Defendant "`touched my privates to his ding-a-ling thing [and] also touched it with his hand.'" CW told Browning that Defendant "`touched her privates and [sic] with his hands and inside her panties.'" Browning did not consider the findings of the medical examinations to be diagnostic of sexual abuse but testified that "[t]he most important part of my report is the child's statement, what the child says. And that, again, is due to there isn't usually any [physical] evidence." When asked if BW and CW's medical examinations were consistent with sexual abuse, Browning replied, "Yes."
Adrienne Opdyke, a child forensic interviewer employed by the Child Advocacy Center, was tendered by the State as an expert in child forensic interviewing. Opdyke also interviewed BW and CW on 9 November 2005 at the Child Advocacy Center. She testified that BW told her that Defendant "touched her on the outside of her private and the inside of her private" and that Defendant "touched her private and her butt with his hand and his ding-a-ling and that it hurt." BW also told Opdyke that Defendant did the same thing to CW in that he "touched her hole and her butt . . . with his hand and his ding-a-ling."
Dr. John Betancourt, a private physician who helped conduct child medical examinations at the Child Advocacy Center, was tendered by the State as an expert in pediatrics in the performance of child medical evaluations. Betancourt was present on 9 November 2005 when Browning interviewed and performed the medical examinations of BW and CW. Betancourt testified that the medical findings could be consistent with sexual abuse.
Debra Mills White, a private therapist at Vista Life Counseling Centers in Asheville, was tendered by the State as an expert in the treatment of sexually abused children and marriage and family therapy. White first met with BW in August 2007 and CW in October 2007 when they were placed in separate foster homes in Asheville. White treated both girls and diagnosed both with post-traumatic stress disorder ("PTSD"). White testified that BW and CW both reported to her that Defendant had sexually abused them.
Elaine Wittmann, a licensed professional counselor in private practice, was tendered by the State as an expert in treating children who are victims of sexual abuse, specifically in the area of PTSD and reactive attachment disorder. Wittmann testified that she worked as a counselor at Crossnore School where BW and CW lived after they had been removed from their grandparents' home. Wittmann treated BW and CW and diagnosed both girls with PTSD and reactive attachment disorder.
Jessica Drew-Cernoch, 18 years old at the time of the trial, testified as follows: She lived with her grandmother and step-grandfather, Defendant's father, until she was 13 years old. On at least one occasion, when she was between six and eight years old, Defendant put his hand down her pants while they were sitting on the couch in the basement. Drew-Cernoch was familiar with the girls and their grandparents as she helped babysit BW and CW. When she learned from either the girls' grandparents or uncle that BW had said that Defendant "was doing like adult stuff . . . to them, I said, you know, you keep them away. The same thing happened to me." At age 15 she began seeing a counselor and was diagnosed with PTSD. Defendant's objections to the admission of this evidence were overruled.
Investigator Dean Hennessee, a criminal investigator with the Burke County Sheriff's Department, testified that on 28 February 2006, he arrested Defendant and put him in his police car. Hennessee testified that on the way to the Burke County Sheriff's Department, Defendant told Hennessee that he had raped his sister but did not remember doing it. Hennessee also testified that Defendant said he had "bad thoughts about girls." Defendant told Hennessee during questioning at the Sheriff's Department that he received counseling from John Middleton, a counselor whose speciality is counseling people who have committed sex crimes or offenses.

III. Discussion

A. Motion to Dismiss
Defendant first argues that the trial court erred in denying his motion to dismiss the charges of first degree sexual offense as the State failed to introduce substantial evidence that Defendant engaged in a "sexual act" with either child as defined by statute.
When reviewing a defendant's motion to dismiss a charge on the basis of insufficiency of the evidence, this Court determines "whether the State presented `substantial evidence' in support of each element of the charged offense." State v. Chapman, 359 N.C. 328, 374, 611 S.E.2d 794, 827 (2005). "`Substantial evidence' is relevant evidence that a reasonable person might accept as adequate, or would consider necessary to support a particular conclusion." State v. Garcia, 358 N.C. 382, 412, 597 S.E.2d 724, 746 (2004) (citations omitted), cert. denied, 543 U.S. 1156, 161 L. Ed. 2d 122 (2005). In this determination, all evidence is considered "in the light most favorable to the State, and the State receives the benefit of every reasonable inference supported by that evidence." Id. at 412-13, 597 S.E.2d at 746. Thus, "[i]f there is substantial evidence  whether direct, circumstantial, or both  to support a finding that the offense charged has been committed and that the defendant committed it, the case is for the jury and the motion to dismiss should be denied." State v. McNeil, 359 N.C. 800, 804, 617 S.E.2d 271, 274 (2005) (quotation marks and citations omitted).
The elements of first degree sexual offense are that (1) the defendant engaged in a sexual act; (2) with a child under the age of 13 years; (3) who is at least four years younger than the defendant; and (4) the defendant is at least 12 years old. N.C. Gen. Stat. § 14-27.4 (2007). The term "sexual act" is defined by statute as "cunnilingus, fellatio, analingus, or anal intercourse, but does not include vaginal intercourse. Sexual act also means the penetration, however slight, by any object into the genital or anal opening of another person's body[.]" N.C. Gen. Stat. § 142-7.1 (2007). Defendant argues that the State failed to present substantial evidence from which the jury could find that Defendant penetrated BW or CW with anything other than his penis. We disagree.
At trial, BW testified as follows:
[STATE:] What did [Defendant] touch your privates with?
[BW:] His hand and his privates.
. . . .
[STATE:] Did you see him do anything to [CW]?
[BW:] Yes.
[STATE:] What did you see him do?
[BW:] Done the same thing.
. . . .
[STATE:] Did he ever touch [CW] with his hand?
[BW:] Yes.
. . . .
[STATE:] Did he put it in her private part?
[BW:] Yes.
Furthermore, Adrienne Opdyke testified that BW told her Defendant "touched her on the outside of her private and the inside of her private" and that Defendant "touched her private and her butt with his hand and his ding-a-ling and that it hurt." BW also told Opdyke that Defendant did the same thing to CW in that he "touched her hole and her butt . . . with his hand and his ding-a-ling." Defendant did not object to this testimony, nor did he request a limiting instruction that the testimony be admitted for corroborative purposes only. "Failure of a trial court to instruct that the evidence was admitted for corroborative purposes only is not reversible error when the defendant has not requested such a limiting instruction." State v. Perry, 298 N.C. 502, 505-06, 259 S.E.2d 496, 498 (1979). Accordingly, Opdyke's testimony was admitted as substantive evidence of Defendant's guilt.
BW's and Opdyke's testimony is sufficient evidence to allow a jury to conclude that Defendant penetrated BW and CW with his hands or fingers. Defendant's argument is meritless and is thus overruled.

B. Admission of Expert Testimony
Defendant next argues that the trial court erred in allowing Browning and Betancourt to testify that BW and CW exhibited physical symptoms consistent with their reports of sexual abuse. Because Defendant failed to object to the admission of this evidence at trial, Defendant now urges this court to find plain error. See State v. Maready, 362 N.C. 614, 622, 669 S.E.2d 564, 569 (2008).
In order to reverse the trial court for plain error, the appellate court must find "fundamental error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done." State v. Davis, 349 N.C. 1, 29, 506 S.E.2d 455, 470 (1998) (quotation marks and citations omitted), cert. denied, 526 U.S. 1161, 144 L. Ed. 2d 219 (1999). "In a sexual offense prosecution involving a child victim, the trial court should not admit expert opinion that sexual abuse has in fact occurred because, absent physical evidence supporting a diagnosis of sexual abuse, such testimony is an impermissible opinion regarding the victim's credibility." State v. Stancil, 355 N.C. 266, 266-67, 559 S.E.2d 788, 789 (2002). However, upon a proper foundation, an expert witness may testify as to the profiles of sexually abused children and whether a particular complainant has symptoms or characteristics consistent therewith. Id. at 267, 559 S.E.2d at 789.
In this case, Browning and Betancourt testified that they physically examined BW and CW. They found that BW's hymen had a "notch." The notch could have been congenital or from trauma, including sexual trauma. Both testified that their findings were "not diagnostic of sexual abuse." Browning and Betancourt further testified that CW had a "septated" hymen. A septated hymen is where a piece of tissue runs through the center of the hymen separating two openings. Browning testified that even if a girl with a septated hymen had been sexually abused, she would not expect to see the hymen torn. Betancourt testified that CW's septated hymen could be congenital.
Browning testified that "[t]he most important part of my report is the child's statement, what the child says. And that, again, is due to there isn't usually any [physical] evidence." When asked if BW's and CW's medical exams were "consistent with sexual abuse[,]" Browning answered, "Yes." Betancourt testified that "[t]he normal findings  and I reiterate, the non-specific findings could be consistent with abuse."
Neither Browning nor Betancourt testified that "sexual abuse has in fact occurred[,]" Stancil, 355 N.C. at 266, 559 S.E.2d at 789, or opined on the credibility of the alleged victims' statements. Instead, Browning and Betancourt testified to the findings of their examinations and opined that while the normal and non-specific findings could be consistent with abuse, they were not "diagnostic" of such abuse. As "it is permissible for an expert to testify that a child exhibits characteristics [consistent with] abused children[,]" State v. Grover, 142 N.C. App. 411, 419, 543 S.E.2d 179, 184 (internal quotation marks and citation omitted), aff'd per curiam, 354 N.C. 354, 553 S.E.2d 679 (2001), the trial court did not err, much less commit plain error, in allowing the challenged testimony. The assignments of error upon which this argument is based are overruled.

C. Exclusion of Evidence under Rule 412
Defendant next argues that the trial court erred in excluding evidence that BW had allegedly been sexually abused by other men.
We review a trial court's evidentiary rulings for abuse of discretion. State v. Hagans, 177 N.C. App. 17, 23, 628 S.E.2d 776, 781 (2006). "`A trial court may be reversed for an abuse of discretion only upon a showing that its ruling was so arbitrary that it could not have been the result of a reasoned decision.'" Id. (quoting State v. Hayes, 314 N.C. 460, 471, 334 S.E.2d 741, 747 (1985)). Moreover, "an error in the admission of evidence is not grounds for granting a new trial or setting aside a verdict unless the admission amounts to the denial of a substantial right." Suarez v. Wotring, 155 N.C. App. 20, 30, 573 S.E.2d 746, 752 (2002). "The burden is on the appellant to not only show error, but also to show that he was prejudiced and a different result would have likely ensued had the error not occurred." Id.
Pursuant to Rule 412,
(b) Notwithstanding any other provision of law, the sexual behavior of the complainant is irrelevant to any issue in the prosecution unless such behavior:
. . . .
(2) Is evidence of specific instances of sexual behavior offered for the purpose of showing that the act or acts charged were not committed by the defendant . . . .
N.C. Gen. Stat. § 8C-1, Rule 412 (2007). Evidence of sexual offenses committed against the alleged victim by someone other than the defendant is admissible to show an alternative explanation for medical findings which are consistent with sexual abuse. State v. Ollis, 318 N.C. 370, 376, 348 S.E.2d 777, 781 (1986).
In Ollis, the victim testified in camera that on the same day the defendant raped her, another man had "`done the samething [sic].'" Id. at 376, 348 S.E.2d at 781. The medical doctor who examined the victim testified that the victim "did receive or has been the object of inappropriate physical and sexual abuse." Id. at 375, 348 S.E.2d at 781. The defendant sought to question the victim concerning the rape perpetrated by the other man, arguing that the evidence was admissible under N.C. Gen. Stat. § 8C-1, Rule 412(b)(2). The trial court, however, concluded the evidence was irrelevant and excluded it. Id. at 376, 348 S.E.2d at 781.
On appeal, the Court agreed with the defendant that the evidence should have been admitted since the evidence regarding the rape by another man, if admitted, "would have provided an alternative explanation for the medical evidence presented . . . and falls within exception (b)(2) of Rule 412." Id.
In this case, White and Wittmann both testified that BW suffered from PTSD. White testified that she used the Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") to diagnose BW with PTSD and explained that the DSM-IV is a reference book for mental health professionals which describes different mental health diagnoses and criteria that a person would need to meet in order to be given that diagnosis. Wittmann explained that the criteria for PTSD requires a person (1) experiencing an event or events that results in intense fear or helplessness, (2) re-experiencing the event, (3) persistent avoidance of stimuli associated with the event, and (4) increased arousal. White testified that BW had experienced multiple traumatic events, and Wittmann testified that she thought BW's PTSD was caused by her having been sexually abused.
Defendant sought to question BW about allegations of sexual abuse she had made against her uncle, a teenaged neighbor who lived across the street from her grandparents' house, and a cousin. The allegation against BW's uncle was substantiated by the Department of Social Services and resulted in BW being removed from the home. Defendant argued that this evidence could have provided an alternative explanation for the traumatic "event or events" that triggered BW's PTSD.
As in Ollis, we agree with Defendant that the evidence should have been admitted because evidence regarding the sexual abuse of BW by another man, if admitted, "would have provided an alternative explanation for the medical evidence presented . . . and falls within exception (b)(2) of Rule 412." Id. Accordingly, the trial court abused its discretion in excluding the evidence.
However, we are not persuaded by Defendant's argument that Defendant was prejudiced by the error. BW testified extensively as to Defendant's abuse of her and CW, including the following:
[STATE:] What happened when [Defendant] came over?
[BW:] We would go in our room and then he would touch us.
[STATE:] Where would he touch you?
[BW:] My privates.
. . . .
[STATE:] Okay. Was [CW] with you?
[BW:] Yes.
[STATE:] Whose room was it?
[BW:] My room.
[STATE:] Where were your grandparents?
[BW:] They were  They were in the living room.
[STATE:] Okay. Was the door open or closed to your room?
[BW:] Closed.
. . . .
[STATE:] What did he touch your privates with?
[BW:] His hand and his privates.
. . . .
[STATE:] Okay. Did he touch his private with your private?
[BW:] Yes.
[State:] What did he do with it?
[BW:] He stuck it in.
[State:] I'm sorry?
[BW:] He stuck it in.
[STATE:] Do you remember if anything came out of his private?
[BW:] Yes.
[STATE:] What?
[BW:] Juice.
. . . .
[STATE:] Did you ever scream for help?
[BW:] Yes.
[State:] What would happen?
[BW:] He would hold my mouth.
[STATE:] With what?
[BW:] His hand.
. . . .
[STATE:] Did you see him do anything to [CW]?
[BW:] Yes.
[STATE:] What did you see him do?
[BW:] Done the same thing.
. . . .
[STATE:] Did he ever touch [CW] with his hand?
[BW:] Yes.
. . . .
[STATE:] Did he put it in her private part?
[BW:] Yes.
[STATE:] Did he put his private in her private?
[BW:] Yes. Yes.
. . . .
[STATE:] How did he touch you with his private, [BW]?
[BW:] He just pulled it up out of his pants.
Similarly, CW testified to the following:
[STATE:] How do you know [Defendant]?
[CW:] He did nasty things.
[STATE:] To whom?
[CW:] Me and [BW].
. . . .
[STATE:] Where did he do these nasty things?
[CW:] In [BW's] bedroom.
[STATE:] Okay. Would the door be open or shut?
[CW:] Shut.
. . . .
[STATE:] What did he do [to you]?
[CW:] He did sex.
[STATE:] What is sex?
[CW:] Humping.
. . . .
[STATE:] What did he put in your private part?
[CW:] Penis. Penis.
. . . .
[STATE:] Did you ever scream when he was doing these things to you?
[CW:] We tried.
[State:] What would happen?
[CW:] He would cover our mouths.
[State:] With what?
[CW:] With his hand.
Accordingly, BW's and CW's detailed testimony corroborated each other's accounts of the events. Furthermore, the testimony of Browning, Opdyke, Wittmann, and White all corroborated the testimony of BW and CW. Given the ample evidence of Defendant's being the perpetrator of sexual abuse against BW, we do not conclude that Defendant was prejudiced by the exclusion of the Rule 412 evidence such that a "different result would have likely ensued had the error not occurred." Suarez, 155 N.C. App. at 30, 573 S.E.2d at 752. Defendant's argument is overruled.

D. Admission of 404(b) Evidence
Defendant next contends the trial court improperly admitted the testimony of Drew-Cernoch concerning alleged prior sexual misconduct involving Defendant.
Rule 404(b) prohibits the introduction of evidence of other crimes, wrongs, or acts to prove the character of a person in order to show he acted in conformity therewith. N.C. Gen. Stat. § 1A-1, Rule 404(b) (2007). However, such evidence may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation or plan. Id. "When evidence of the defendant's prior sex offenses is offered for the proper purpose of showing plan, scheme, system, or design . . . the `ultimate test' for admissibility has two parts: First, whether the incidents are sufficiently similar; and second, whether the incidents are too remote in time." State v. Davis, 101 N.C. App. 12, 18-19, 398 S.E.2d 645, 649 (1990), disc. review denied, 328 N.C. 574, 403 S.E.2d 516 (1991).
When the features of the earlier act are dissimilar from those of the offense with which the defendant is currently charged, such evidence lacks probative value. When otherwise similar offenses are distanced by significant stretches of time, commonalities become less striking, and the probative value of the analogy attaches less to the acts than to the character of the actor.
State v. Bidgood, 144 N.C. App. 267, 271-72, 550 S.E.2d 198, 201 (quotation marks and citation omitted), cert. denied, 354 N.C. 222, 554 S.E.2d 648 (2001).
Furthermore, although evidence may be admissible under Rule 404(b), the probative value of the evidence must still outweigh the danger of undue prejudice to the defendant to be admissible under Rule 403. State v. Frazier, 319 N.C. 388, 390, 354 S.E.2d 475, 477 (1987). "That determination is within the sound discretion of the trial court, whose ruling will be reversed on appeal only when it is shown that the ruling was so arbitrary that it could not have resulted from a reasoned decision." Bidgood, 144 N.C. App. at 272, 550 S.E.2d at 202.
In State v. Frazier, 344 N.C. 611, 476 S.E.2d 297 (1996), our Supreme Court held that evidence of the defendant's prior sexual assaults was admissible under Rules 404(b) and 403. Id. at 616, 476 S.E.2d at 300. All of the defendant's victims were adolescents at the time the defendant began to sexually abuse them. With each of the defendant's victims, he slowly began touching them and gradually reached more serious abuse culminating in intercourse. During the time of the abuse, the defendant gave his victims money and bought them gifts. Furthermore, the defendant threatened each victim that if she revealed to anyone what he was doing, she would be sent away or suffer some other severe consequence. All of the victims were related to the defendant either through his own marriage or the marriage of his children, and all of the victims lived with or near him during the time of the abuse. Thus, our Supreme Court found this evidence was a "classic example of a common plan or scheme." Id.
In this case, during voir dire, Drew-Cernoch testified that when she was between six and eight years old, she was sitting on the couch in the basement of her home when Defendant put his hands down her pants. This happened once or maybe twice and she did not think that Defendant put his finger inside her. She was eventually diagnosed with PTSD. The trial court allowed Drew-Cernoch to give this testimony before the jury, finding that "the evidence is relevant, that some of the evidence is similar in nature to the allegations made by [CW] and [BW]. That some of the evidence is not similar." The trial court also found that the events, which happened seven to nine years before the events at issue in this case, were "not too remote in time to be excluded." The court admitted the evidence to show that Defendant "had the intent, which is a necessary element of [two of] the crime[s] charged in the case, or that there existed in the mind of the [D]efendant a plan, scheme, system, or design involving the crimes charged in this case." We do not agree.
Unlike the evidence in Frazier, Drew-Cernoch's testimony does not tend to establish a plan or scheme of abuse by Defendant, nor does it show that Defendant had the requisite intent to commit the crimes charged. The incident Drew-Cernoch described had no relationship to the testimony of BW and CW and was dissimilar to the repeated pattern of abuse described by BW and CW. Nonetheless, the State argues that the similarities include the fact that DrewC-ernoch and the victims in this case were both young girls, the alleged event took place in the child's residence while the grandparents were in the next room, and Defendant positioned himself as a relative and friend to the guardian/grandparents. We are not persuaded and conclude that such similarities do not establish, in the circumstances presented by this case, a common scheme or plan or intent on Defendant's part to commit the crimes charged. Accordingly, Drew-Cernoch's testimony lacked probative value, Bidgood, 144 N.C. App. at 271, 550 S.E.2d at 201, and the trial court abused its discretion in admitting the evidence.
Defendant argues that he suffered prejudice as a result of the admission of this testimony because "the jury undoubtably considered Defendant a repeat sex offender." We disagree. There is no evidence that, based on Drew-Cernoch's testimony, the jury considered Defendant a repeat sex offender or that, absent the error, a different outcome would have resulted. Our Supreme Court has noted that "[e]rroneous admission of evidence may be harmless where there is an abundance of other competent evidence to support the state's primary contentions, or where there is overwhelming evidence of defendant's guilt." State v. Weldon, 314 N.C. 401, 411, 333 S.E.2d 701, 707 (1985)(internal citations omitted). As the jury in this case was presented with ample evidence of Defendant's repeated sexual abuse of both girls, the trial court's error was harmless. Defendant's argument is overruled.

E. Jury Instruction
Finally, Defendant argues that the trial court committed plain error[2] when it failed to instruct the jury that the term "sexual act" for the purpose of the charges of first degree statutory sex offense did not include vaginal intercourse.
Under the plain error standard, "defendant must show that `absent the erroneous instruction, a jury would not have found him guilty of the offense charged.'" State v. Harris, 140 N.C. App. 208, 214, 535 S.E.2d 614, 618 (quotation marks and citation omitted), disc. review denied, 353 N.C. 271, 546 S.E.2d 122 (2000).
Under our statutes, "sexual act" does not include the act of vaginal intercourse. N.C. Gen. Stat. § 14-27.1(4) (2007). "This is [] because vaginal intercourse forms the basis for rape, whereas statutory sex offenses are based upon other sexual acts . . . ." Harris, 140 N.C. App. at 214, 535 S.E.2d at 618.
In Harris, the trial court instructed the jury that "`sexual act' encompassed `any penetration, however slight, by an object into the genital opening of a person's body.'" Id. at 214, 535 S.E.2d at 619. Defendant argued that "[b]ecause defendant's penis could serve as the `object' of penetration under this definition . . . the court's instruction allowed the jury to base its conviction for second-degree sex offense on the same act that it did for rape, i.e. vaginal intercourse." Id. at 214-15, 535 S.E.2d at 619. Although this Court acknowledged that the trial court should have explicitly excluded vaginal intercourse from its definition of "sexual act," this Court concluded that the trial court's instructions were sufficient to allow the jury to differentiate between the two offenses and consider vaginal intercourse only for the rape charge and digital penetration for the sex offense charge. Id. at 215, 535 S.E.2d at 619.
This Court also rejected a similar argument in State v. Speller, 102 N.C. App. 697, 705, 404 S.E.2d 15, 19, disc. review denied, 329 N.C. 503, 407 S.E.2d 548 (1991). In that case, the trial court defined "sexual act" as either "(1) anal intercourse, the penetration of the anus of one person by the male sexual organ of another, or (2) the penetration by an object into the genital opening of a person's body." Id. This Court concluded that, because the trial court explicitly distinguished between "male sexual organ" in the first part of the instruction and "object" in the second part, there was "no reasonable possibility that a juror would incorrectly equate the two" as both referring to defendant's penis. Id.
In the present case, as in Harris, the trial court instructed the jury that a "sexual act means any penetration, however slight, by an object into the genital opening of a person's body." Furthermore, as in Speller, the trial court explicitly distinguished between "male sex organ" and "object." In its instruction on rape, the trial court defined an element of that offense as "penetration, however slight, of the female sex organ by the male sex organ." Immediately following the rape instruction, the trial court instructed on the sex offense charge, defining "sexual act" as outlined above. We conclude these instructions were sufficient to differentiate between the two offenses so that the jury understood it was to consider the vaginal intercourse for purposes of the rape charge and penetration by any other means for purposes of the statutory sex offense charges. Thus the trial court did not err, much less commit plain error, in instructing the jury on this charge. Defendant's argument is overruled.
We hold that Defendant received a fair trial free of prejudicial error.
NO PREJUDICIAL ERROR.
Chief Judge MARTIN and Judge HUNTER, JR. concur.
Report per Rule 30(e).
NOTES
[1] BW and CW are minors and will be referred to by their initials to protect their anonymity.
[2] Because Defendant failed to object to the admission of this evidence at trial, we review solely for plain error. See Maready, 362 N.C. at 622, 669 S.E.2d at 569.