STATE OF NORTH CAROLINA v. JOHN BILLY FRAZIER

No. 17A96

(Filed 11 October 1996)

**Evidence and Witnesses § 373 (NCI4th)— indecent liberties and rape—adolescent family members—sexual abuse of other family members—remoteness—admissibility to show common plan**

In a prosecution of defendant for taking indecent liberties with and first-degree rape of his two adolescent stepgranddaughters, testimony by three other female members of defendant's family recounting how defendant had sexually abused them when they were young did not pertain to acts too remote in time to be admissible under Rule 404(b) to show defendant's common plan or scheme to sexually abuse female family members where the testimony tended to prove that defendant's prior acts of sexual abuse occurred continuously over a period of approximately twenty-six years and in a strikingly similar pattern in that all the victims were adolescents at the time defendant began his sexual assaults; in each instance, defendant slowly began touching the

victim and gradually reached more serious abuse culminating in intercourse; defendant bought the victims gifts and gave them money during the period of abuse; defendant threatened each of them that if she revealed to anyone what he was doing, she would be sent away or suffer some other severe sanction; all of the victims were related to defendant either through his own marriage or the marriage of his children; and all the victims lived with or near defendant during the course of the abuse. N.C.G.S. § 8C-1, Rule 404(b).

**Am Jur 2d, Rape § 73.**

**Admissibility, in prosecution for sexual offense, of evidence of other similar offenses. 77 ALR2d 841.**

**Admissibility, in rape case, of evidence that accused raped or attempted to rape person other than prosecutrix. 2 ALR4th 330.**

Justice WEBB dissenting.

Justice ORR joins in this dissenting opinion.

Appeal by defendant pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 121 N.C. App. 1, 464 S.E.2d 490 (1995), finding no prejudicial error in a trial that resulted in judgments entered by Davis (James C.), J., on 4 March 1994 in Superior Court, Northampton County, upon defendant's conviction of ten counts of taking indecent liberties with a minor and two counts of first-degree rape. Heard in the Supreme Court 9 September 1996.

*Michael F. Easley, Attorney General, by Sondra C. Panico, Associate Attorney General, for the State.*

*Steven F. Bryant for defendant-appellant.*

WHICHARD, Justice.

Defendant was found guilty of ten counts of taking indecent liberties with a child and two counts of first-degree rape. The trial court sentenced him to two consecutive life sentences. The victims were his two adolescent stepgranddaughters, identified here as L.B. and S.B.

At trial, fourteen-year-old L.B. testified that defendant began touching her inappropriately on her breasts and buttocks when

she was nine or ten. Defendant sexually molested her several times a week when no one else was present. When L.B. was ten years old, defendant raped her. He raped her a second time when she was between the ages of eleven and twelve. L.B. testified that on occasion, defendant would give her money and buy her candy, telling her it was for helping him out. She further testified that she did not tell anyone because defendant had threatened to send her away if she did.

Eventually, L.B. confided to her cousin that defendant had been sexually abusing her. This disclosure occurred after Polly, defendant's wife, took L.B. to a doctor who told them L.B. needed to be on birth control pills. L.B. also told her sister, S.B., who stated that defendant had "messed with her" as well. L.B. then disclosed the sexual abuse to a school psychiatrist and a police detective.

Sixteen-year-old S.B. also testified at trial. She stated that defendant sexually molested her two or three times a week from the time she was thirteen years old until she was fifteen. Defendant would kiss her on the lips, fondle her breasts, and put his hands down her pants. S.B. stated that during the time period over which defendant abused her, defendant gave her money, bought her things, and taught her how to drive his truck. S.B. testified that defendant told her not to tell anyone about the sexual activity.

Over defendant's objection, the trial court admitted the testimony of three other female members of defendant's family who recounted how defendant had sexually abused them when they were young. This testimony is the subject of defendant's first assignment of error. Defendant argues that the trial court violated Rule 404(b) of the North Carolina Rules of Evidence by admitting the testimony of these witnesses.

The first witness, one of Polly's daughters and the stepmother of L.B. and S.B., testified that she first met defendant around 1964 when she was approximately four years old, after defendant married her mother. When she was sixteen and began "filling out," defendant started "feeling" her around her waist, breasts, buttocks, and vagina. On occasion, defendant kissed her "in the mouth [and] on the face." She lived with an aunt for a year while defendant and Polly traveled with defendant's company. Defendant and Polly returned when the witness was seventeen, and defendant resumed touching her inappropriately.

This witness married her first husband when she was twenty and lived with him until she was twenty-one. Their son was born shortly after they separated. In 1983 or 1984, after she married her second husband (the father of L.B. and S.B.), defendant paid many of their expenses. In return for his financial contributions, defendant told her she needed to show him "some affection" or he would take her son away from her. Eventually, defendant had sexual intercourse with her while her husband was at work, her children were at school, and Polly was away. Defendant threatened to have S.B. and L.B. sent away and to raise her son himself if she told anyone about the sexual incidents.

The second witness, the first witness's sister and Polly's other daughter, also testified for the State. She stated that when she was young, defendant would kiss her on the mouth instead of the cheek. In approximately 1966, when she was twelve or thirteen, defendant got in the shower with her and began caressing her. He then placed her arms on the wall, lifted her leg, and had sexual intercourse with her in the shower. Defendant made it clear to her that if she told anyone, he would no longer protect her from the beatings Polly often gave her.

The third female family member to testify against defendant stated that she first met defendant when she was twelve years old because she and the second witness were good friends. When she was fourteen, she married Larry Frazier, defendant's sixteen-year-old son. The couple had a baby a short time later. Defendant began stopping by daily to check on the baby. When the witness was fifteen, defendant pulled her into the bedroom and had sexual intercourse with her while Larry was at work. Thereafter, Larry began working the third shift, and defendant came by almost every morning between five and six o'clock to have sexual intercourse with her. She testified that she did not want this to happen but that she was too young and afraid to say anything. This conduct continued for approximately two years until she finally told the second witness about it.

Rule 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

N.C.G.S. § 8C-1, Rule 404(b) (1992). Thus,

> even though evidence may tend to show other crimes, wrongs, or acts by the defendant and his propensity to commit them, it is admissible under Rule 404(b) so long as it also "is relevant for some purpose *other than* to show that defendant has the propensity for the type of conduct for which he is being tried."

*State v. Bagley*, 321 N.C. 201, 206, 362 S.E.2d 244, 247 (1987) (quoting *State v. Morgan*, 315 N.C. 626, 637, 340 S.E.2d 84, 91 (1986)), *cert. denied*, 485 U.S. 1036, 99 L. Ed. 2d 912 (1988). Here, the State argues that the three witnesses' testimony was admissible to demonstrate the existence of a common plan or scheme by defendant to sexually abuse adolescent female family members. The test for determining whether such evidence is admissible is whether the incidents establishing the common plan or scheme are sufficiently similar and not so remote in time as to be more probative than prejudicial under the balancing test of N.C.G.S. § 8C-1, Rule 403. *State v. Boyd*, 321 N.C. 574, 577, 364 S.E.2d 118, 119 (1988).

Defendant contends that the testimony of these three witnesses was inadmissible to prove the existence of a common plan or scheme because the prior acts are alleged to have occurred over a time period of seven to twenty-seven years before the trial for the present charges. They are therefore too remote in time to be relevant or probative. In making this argument, defendant relies on *State v. Jones*, 322 N.C. 585, 369 S.E.2d 822 (1988), a case involving alleged sexual abuse by a stepfather against his stepdaughter. In *Jones* the defendant was charged with first-degree rape and taking indecent liberties with a minor. The State presented the testimony of a female who stated that she had been subjected to similar sexual acts by defendant approximately seven years earlier. This Court held that the prior acts of sexual misconduct were too remote in time to be admissible under Rule 404(b). For the reasons that follow, we hold that *Jones* does not control here and that the trial court properly admitted the testimony in question.

This Court has been liberal in allowing evidence of similar offenses in trials on sexual crime charges. *State v. McCarty*, 326 N.C. 782, 785, 392 S.E.2d 359, 361 (1990). Subsequent to *Jones*, it has permitted testimony as to prior acts of sexual misconduct which occurred more than seven years earlier. In *State v. Shamsid-Deen*, 324 N.C. 437, 379 S.E.2d 842 (1989), a case tried prior to the effective date of the Rules of Evidence, we held that it was not error for the

STATE v. FRAZIER

[344 N.C. 611 (1996)]

trial court to admit the testimony of sisters of the victim that their father had also sexually abused them. There, the defendant's prior sexual misconduct with the sisters occurred during a twenty-year period. *Id.* at 447, 379 S.E.2d at 848. Likewise, we recently held that a ten-year gap between instances of similar sexual misbehavior did not render them so remote in time as to negate the existence of a common plan or scheme. *State v. Penland*, 343 N.C. 634, 653-54, 472 S.E.2d 734, 745 (1996).

Here, the testimony in question tended to prove that defendant's prior acts of sexual abuse occurred continuously over a period of approximately twenty-six years and in a strikingly similar pattern. All of the victims were adolescents at the time defendant began his sexual assaults. In each instance, defendant slowly began touching the victim and gradually reached more serious abuse culminating in intercourse. During the period of the abuse, defendant bought his victims gifts and gave them money. He also threatened each of them that if she revealed to anyone what he was doing, she would be sent away or suffer some other severe sanction. All of the victims were related to defendant either through his own marriage or the marriage of his children, and all lived with or near him during the course of the abuse.

We conclude that this evidence presents a classic example of a common plan or scheme. "When similar acts have been performed continuously over a period of years, the passage of time serves to prove, rather than disprove, the existence of a plan." *Shamsid-Deen*, 324 N.C. at 445, 379 S.E.2d at 847. We therefore affirm the Court of Appeals and hold that the prior acts were not too remote to be considered as evidence of defendant's common plan or scheme to sexually abuse female family members, including the victims here.

Defendant presents three additional assignments of error. First, defendant argues that the trial court erred in allowing the State to cross-examine him concerning prior acts of sexual misconduct because it forced him to defend himself against extrinsic allegations in addition to the pending charges. Second, he contends that the trial court erred by allowing improper cross-examination and impeachment of three defense witnesses. Finally, defendant argues that the prosecutor's improper comments, conduct, and arguments prejudiced defendant's ability to receive a fair trial.

The majority and minority opinions in the Court of Appeals agreed that error occurred in each of these instances. The majority

STATE v. FRAZIER

[344 N.C. 611 (1996)]

held, however, that the errors did not prejudice defendant and were therefore harmless. Judge John concluded in his dissent that even assuming *arguendo* that each error was harmless standing alone, when considered in combination, the prejudicial impact was such that defendant must receive a new trial.

In order to show prejudicial error, defendant must show a reasonable possibility that had the error not been committed, a different result would have been reached at trial. N.C.G.S. § 15A-1443(a) (1988); *State v. Martin*, 322 N.C. 229, 238-39, 367 S.E.2d 618, 623-24 (1988). After reviewing the record, we conclude that there is no reasonable possibility that absent these errors, standing alone or cumulatively, the outcome of the trial would have been different.

Accordingly, the decision of the Court of Appeals is affirmed.

AFFIRMED.

Justice WEBB dissenting.

I dissent. The majority says, "This Court has been liberal in allowing evidence of similar offenses in trials on sexual crime charges." I would say that is an understatement and today we have outdone ourselves.

The majority says "the prior acts were not too remote to be considered as evidence of defendant's common plan or scheme to sexually abuse female family members, including the victims here." It is hard to understand how the earlier sex offenses showed he had a plan to molest L.B. and S.B. who were not alive when the incidents occurred.

What the evidence of previous offenses does show is that the defendant is the type person who sexually molests young girls in his family. This is evidence excluded by N.C.G.S. § 8C-1, Rule 404(b). To hold that evidence of bad acts proves the defendant had a plan to commit those acts and the act for which the defendant is being tried eviscerates the rule. If proof of a bad act is admissible because it proves a plan to commit another bad act it is hard to imagine what evidence of bad acts are excludable. Nevertheless, that is what we hold today. I do not believe we should sanitize evidence which is not otherwise admissible by adding an inference to it, as we have done in this case, which makes it admissible in form but not in substance.

I agree with Judge John's dissent in the Court of Appeals.

I vote for a new trial.

Justice Orr joins in this dissenting opinion.