STATE OF NORTH CAROLINA
v.
DAVID WINTHROW HAIRSTON
No. COA08-1579
Court of Appeals of North Carolina
Filed September 15, 2009
This case not for publication
Attorney General Roy Cooper, by Assistant Attorney General Margaret A. Force, for the State.
Kevin P. Bradley, for defendant-appellant.
WYNN, Judge.
Defendant David Winthrow Hairston appeals from a jury verdict, finding him guilty of statutory rape, statutory sexual offense, two counts of indecent liberties with a child, and first degree statutory rape of a child under thirteen. Defendant argues the trial court erred in admitting the testimony of three witnesses alleging prior sexual acts that were too remote and dissimilar. After careful review, we find no error.
At trial, the State presented evidence tending to show that Defendant repeatedly engaged in sexual acts with a minor female, beginning when she was six and lasting until she was fourteen-years old ("the minor"). During this time, the minor either lived with Defendant and his wife, or was in his care while her mother worked. The minor testified that initially the contact was limited to Defendant touching and rubbing her vagina, putting his fingers inside of her, and making her touch his penis. These acts typically occurred at Defendant's house while no one else was in the room with them.
Later, after the minor went to live with Defendant, the conduct escalated: he performed oral sex on her, tried to get her to touch and/or kiss his penis, exposed himself to her, and masturbated in front of her. When the minor was in fifth grade, he attempted to penetrate her vagina but was unsuccessful. These acts typically took place either in Defendant's home or in the back of his recreational vehicle or van. Sometimes they were alone; other times Defendant would come into her bedroom at night or the acts would occur while others were in different parts of the home.
In January of 2003, when she was twelve years old and residing with Defendant, he successfully engaged in sexual intercourse with the minor. After dark, he drove her to a parking lot, parked his van, and got into the back seat. He took off her pants and penetrated her with his finger. He then took his penis out of his pants and tried to get her to kiss him on the mouth. Finally, Defendant got on top of her and put his penis inside her for the first time.
In August of 2005, when the minor was fourteen years old and residing with her mother, Defendant took the minor to a Sonic restaurant. He parked his van at the back of the parking lot, climbed into the back of the van with the minor, took off their clothes, and began touching her. The minor testified that he took out his penis, rubbed her "private-part area," put "his fingers inside" her, and performed oral sex on her. He then had vaginal intercourse with the minor.
Shortly after the last incident, the minor gave her mother a letter telling her of Defendant's ongoing sexual abuse. A few months later, the minor and her uncle reported the alleged abuse to the police. Defendant was indicted on charges of statutory rape, statutory sexual offense, and taking indecent liberties with a child.
At trial, the State offered three female witnesses who were also allegedly abused by the Defendant as children. After voir dire examination and consideration of Defendant's motion in limine, the trial court "conducted the balancing and weighing test articulated in Rule 403" and concluded that the testimony was admissible under N.C. Rule of Evidence 404(b) "for the purpose of showing pattern, preparation, plan and intent." The three witnesses testified that Defendant engaged them in sexual acts when they were between the ages of seven and twelve years old.
Specifically, the first female witness testified that in 1966 and 1968, when she was between the ages of nine and eleven years old, Defendant touched and fondled her vagina with his fingers. She testified that it occurred twice at night in her bedroom, while she was living with Defendant and his wife. She testified that it occurred once during the daytime, on a weekend when she was home alone with Defendant. She explained that she hadn't told anyone "because he was a minister" and "everybody thought so highly of him" and because she did not think anyone would believe her. She first disclosed these experiences with Defendant when she was contacted by the grandmother of the minor in this case.
The second female witness testified that Defendant first engaged her in sexual acts in 1975 when she was seven or eight years old. The conduct continued until Defendant moved away in approximately 1981 when she was eleven or twelve and in sixth or seventh grade. She detailed five specific occasions in which she recalled that Defendant touched her vagina, put his fingers inside her, performed oral sex on her, attempted to penetrate her, and attempted to force her to perform oral sex on him.
From 1975 until 1981, the second female witness lived across the street from Defendant and often stayed at his house after school until her grandmother or aunt came home from work. She testified that Defendant first touched her vagina and put his finger inside her one day after school. The incident occurred in the front bathroom of Defendant's home while there were other people in the back of the house. On a later occasion, the Defendant performed oral sex on her in his bathroom again while others were in the back of the house.
Additionally, the second female witness testified that Defendant's conduct escalated over time, stating, "I remember him using his fingers a lot. He would start out with one, and then he would do two, you know. Then the next time it would be another  I mean, another finger . . . And he would say he was getting me ready." One time it happened at night on a bus, when she and Defendant were returning from a church singing performance, after others had fallen asleep. On a later occasion, when she was in the fourth or fifth grade, Defendant made her bend over the toilet and attempted to put his penis inside her. She testified that he stopped when she started crying and told her "he guessed he would have to keep using his fingers until I'm ready." Another time, Defendant attempted to have her perform oral sex on him.
The second female witness testified that she never told anyone until she was contacted by a detective in this matter. She stated that she had not said anything because Defendant told her that, if she did, she would end up in foster care. She added, "[Y]ou believe the things that adults tell you, you know, especially someone who's a preacher."
Finally, the third female witness, testified that Defendant engaged her in sexual conduct in 1976, when she was eleven or twelve years old. Defendant was a friend of the family who lived across the street, as well as a minister in the community, who sometimes picked her up from school for her mother. Three or four times, when she was alone with Defendant at his home, he tried to get her to touch his penis. On other occasions, he would expose himself to her and masturbate in front of her. She did not tell anyone what had happened to her; she was afraid to say anything because children were not allowed to "backtalk" to adults, and she was afraid no one would believe her because "you didn't hear a lot about things like that" when she was growing up.
The trial court submitted the charges against Defendant to the jury. The jury returned a verdict of guilty on the charges of statutory rape, statutory sexual offense, two counts of indecent liberties with a child, and first degree statutory rape of a child under thirteen. Following the trial court's judgments, and consistent with the jury's verdict, Defendant received three consolidated sentences of 240 to 297 months imprisonment, to be served consecutively.
Defendant appeals, arguing that (I) the trial court erred by admitting testimony concerning prior acts by the Defendant because the acts were too dissimilar and remote from the present charges, and (II) Defendant should not be deemed to have waived review of the admission of the second female witness' testimony because the failure to renew his objection at trial was a result of ineffective assistance of counsel.

I.
A trial court's determination of the admissibility of Rule 404(b) evidence is reviewed for abuse of discretion. See State v. Theer, 181 N.C. App. 349, 359-60, 639 S.E.2d 655, 662 (2007). "This Court will find an abuse of discretion only where a trial court's ruling `is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision.'" Id. (quoting State v. Campbell, 359 N.C. 644, 673, 617 S.E.2d 1, 19 (2005)). Additionally, our Supreme Court has permitted liberally the presentation of evidence in sexual offense cases "to prove any relevant fact not prohibited by Rule 404(b)." State v. White, 331 N.C. 604, 612, 419 S.E.2d 557, 561 (1992).
Under Rule 404(b):
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment, or accident.
N.C. Gen. Stat. § 8C-1, Rule 404(b) (2007) (emphasis added). Further, our Supreme Court has narrowly construed Rule 404(b) such that evidence offered for a proper purpose is admissible under the rule unless "its only probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged." State v. Jeter, 326 N.C. 457, 460, 389 S.E.2d 805, 807 (1990). However, Rule 404(b) evidence must also be sufficiently similar and not so remote in time as to be more prejudicial than probative under Rule 403. State v. Frazier, 344 N.C. 611, 615, 476 S.E.2d 297, 299 (1996). The similarities between the acts need not be "unique" or "bizarre"; rather they "must tend to support a reasonable inference" that the same person committed both acts. State v. Stager, 329 N.C. 278, 304, 406 S.E.2d 876, 891 (1991) (citing State v. Green, 321 N.C. 594, 603, 604, 365 S.E.2d 587, 593 (1988)).
Defendant argues that the prior conduct by the three female witnesses was "markedly different" from the conduct charged in this case because it allegedly took place in Defendant's van and involved penetration and oral sex, and only one of the three witnesses testified to similar past conduct. We disagree.
Here, the testimony regarding Defendant's prior conduct demonstrated the following similarities to the present charges: the victims were all females between seven and twelve years old when the conduct began; Defendant was a "family friend," neighbor, or preacher in their community; they were under the care and supervision of Defendant or living with Defendant when the acts occurred; the acts took place while Defendant and the witnesses were either alone or isolated from others, often after dark; and the acts occurred either in a vehicle or in a bedroom or bathroom at Defendant's home. Additionally, all of the alleged victims testified that the abuse began by Defendant fondling them and penetrating them with his fingers.
Accordingly, we find these similarities to be sufficient to reasonably support the inference that Defendant committed the prior and present acts. See State v. Patterson, 150 N.C. App. 393, 397, 563 S.E.2d 88, 90 (2002) (holding that the similarities in age, relationship to the defendant, location and pattern of abuse, and threats not to reveal the abuse were sufficient to "support the inference that the same person committed the offenses").
Next, Defendant argues that the prior acts were too remote in time to be relevant to the present charges. Again, we disagree.
"Remoteness for purposes of 404(b) must be considered in light of the specific facts of each case and for the purposes for which the evidence is being offered." State v. Aldridge, 139 N.C. App. 706, 714, 534 S.E.2d 629, 635, disc. review denied, 353 N.C. 269, 546 S.E.2d 114 (2000). Moreover, remoteness "`serves to prove, rather than disprove, the existence of a plan'" where the evidence is offered to show similar acts performed continuously over a period of time. State v. Frazier, 344 N.C. 611, 616, 476 S.E.2d 297, 300 (1996) (quoting State v. Shamsid-Deen, 324 N.C. 437, 445, 379 S.E.2d 842, 847 (1989)). As this Court noted in State v. Love, where there is evidence of a "strikingly similar pattern" of sexual abuse over a period of years, prior sexual acts are not so remote in time as to be more prejudicial than probative. 152 N.C. App. 608, 614, 568 S.E.2d 320, 324 (2002) (twenty-year gap between acts of similar sexual abuse was not too remote to be admissible as common plan where similarities between the prior abuse and the charged crime were striking); see State v. Riddick, 316 N.C. 127, 134, 340 S.E.2d 422, 427 (1986) (remoteness in time is less significant when pattern is "strikingly similar").
In State v. Frazier, our Supreme Court held that "strikingly similar" prior acts of sexual abuse occurring over a twenty-six year period were not too remote to be admissible to show a common plan to sexually abuse female family members. 344 N.C. at 616, 476 S.E.2d at 300; see also State v. Penland, 343 N.C. 634, 654, 472 S.E.2d 734, 745 (1996) (upholding admission of evidence of prior sexual acts because of similarity to conduct charged despite ten-year gap between instances). Likewise in this case, although the prior acts of sexual abuse alleged by the three female witnesses occurred between twenty-seven and thirty-seven years prior to the beginning of the charged conduct in the present case, we hold the gap between the acts to be not too remote in time due to the striking similarities between the victims' ages, their relationship with Defendant, and his pattern of abuse.

II.
Next, Defendant argues that he should not be deemed to have waived review of the admission of the second female witness's testimony because the failure to renew his objection at trial was a result of ineffective assistance of counsel. We disagree.
When a defendant asserts a claim that he was deprived of effective counsel, he must show that absent this error the outcome of his trial would have been different. State v. Wade, 155 N.C. App. 1, 18, 573 S.E.2d 643, 655 (2002) (citing State v. Braswell, 312 N.C. 553, 561-63, 324 S.E.2d 241, 248 (1985)). Having found no error in the trial court's decision to allow the admission of the second female witness's testimony, the outcome of his trial would have been no different had defense counsel objected to the second female witness's testimony.
No error.
Judges STROUD and BEASLEY concur.
Report per Rule 30(e).