IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-726

Filed 6 August 2024

Rowan County, Nos. 20 CRS 50313–15, 50434–36, 22 CRS 674

STATE OF NORTH CAROLINA

v.

ALEJANDRO GONZALEZ LOPEZ

Appeal by defendant from judgments entered 6 September 2022 by Judge Michael D. Duncan in Rowan County Superior Court. Heard in the Court of Appeals 16 April 2024.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Mary L. Lucasse, for the State.*

*Caryn Strickland for defendant-appellant.*

ZACHARY, Judge.

Defendant Alejandro Gonzalez Lopez appeals from the trial court's judgments entered upon a jury's verdicts finding him guilty of one count each of statutory rape of a child by an adult, statutory sex offense with a child by an adult, statutory sexual offense with a person 15 years of age or younger, sexual offense with a child, and rape of a child, as well as two counts of taking indecent liberties with a child. After careful review, we conclude that Defendant received a fair trial, free from error.

## BACKGROUND

The evidence at trial showed the following: Defendant sporadically dated the mother of D.M. and S.M.[1] from 2007 until 2017, and he lived with the family during various periods over that time. S.M. was born in July of 2000 and D.M. was born in October of 2005. The sisters alleged that Defendant sexually abused them.

According to D.M., during the summer before fifth grade when she was nine years old, Defendant "made [her] suck his penis[.]" A "short period of time" later, Defendant also attempted to "stick his penis into [D.M.'s] vagina[.]" Roughly one month after that first attempt, Defendant succeeded in "put[ting] his penis into [her] vagina[,]" causing D.M. "immense pain." D.M. also recalled an incident when Defendant followed her into the bathroom and "started to kiss" her. Defendant sexually abused D.M. "a lot of times" while her mother was at work.

In September of 2019, D.M. reported Defendant's sexual abuse to her pediatric physician's assistant, telling her that "things were better now because [Defendant] was out of the home[,]" but that "before fifth grade and during fifth grade . . . he was sexually abusing her." The physician's assistant notified the Rowan County Department of Social Services.

Subsequently, S.M. reported that Defendant had also engaged in sexual acts with her. Specifically, S.M. testified that in 2010, when she was ten years old, she and Defendant had intercourse in the home. According to S.M., she did not tell anyone

---

[1] We use the initials adopted by the parties to protect the identities of the minor victims.

about that assault because Defendant convinced her that they "were in a relationship[.]" S.M. also recounted that when she was approximately 11 years old, Defendant "put his penis in [her] mouth[.]" She recalled a third incident in 2011 or 2012 during which Defendant "caress[ed] [her] breasts" and then became angry when she "wasn't acting pleased[,]" as well as another incident of digital penetration. Defendant regularly engaged in sexual acts with S.M. from 2012 until 2014.

On 17 February 2020, a Rowan County grand jury indicted Defendant for two counts of statutory rape of a child by an adult, two counts of statutory sex offense of a child by an adult, two counts of taking indecent liberties with a child, and one count of statutory sex offense with a person 15 years old or younger.

This matter came on for jury trial on 29 August 2022. On 6 September 2022, the jury found Defendant guilty of three offenses against D.M.—statutory rape of a child by an adult, statutory sex offense with a child by an adult, and taking indecent liberties with a child; and four offenses against S.M.—statutory sexual offense with a person who is under 15 years, taking indecent liberties with a child, sexual offense with a child, and rape of a child.

The same day, the trial court entered seven judgments, including two judgments sentencing Defendant to consecutive terms of 300 to 420 months in the custody of the North Carolina Division of Adult Correction for rape of a child and statutory rape of a child by an adult. The trial court sentenced Defendant to two additional consecutive terms of 16 to 29 months for each charge of indecent liberties

with a child. The trial court also sentenced Defendant to three concurrent terms: 240 to 348 months for statutory sexual offense with a person under 15, and two terms each of 300 to 420 months for statutory sex offense with a child by an adult and sexual offense with a child.

Defendant gave oral notice of appeal.

## **DISCUSSION**

On appeal, Defendant argues that "[t]he trial court erred by denying [his] motion to exclude other bad acts regarding an uncharged prior 2007 incident," because the evidence was inadmissible under Rule 404(b) of the North Carolina Rules of Evidence and "was unduly prejudicial under Rule 403." Additionally, Defendant argues that the trial court erroneously denied his motion to dismiss "the indictments regarding D.M. because the State failed to produce substantial evidence to prove the dates of the alleged offenses, which prejudiced [his] defense."

## I.     **Evidence of Prior Bad Acts**

At trial, the State sought to introduce evidence of Defendant's uncharged acts of sexual abuse of S.M., which allegedly occurred in Cabarrus County beginning in 2007 when S.M. was seven or eight years old. On voir dire, S.M. testified that Defendant sexually abused her from 2007 to 2012, but that she had "blocked out" the specific details of those individual acts of sexual abuse:

> Q. Back when you lived [there] when you were seven years old [in 2007], can you tell the Court what, if anything, happened between you and [Defendant] sexually[?]

A. While I was living in the [Cabarrus County apartment], I clearly remember [Defendant] putting blankets on the living room floor, and I clearly remember [him] laying down with me on the floor and rubbing his penis on my vagina. . . . I remember trying to get away but not being able to because [he] was holding me so hard. And I remember after [Defendant] was done ejaculating he let me go . . . .

. . . .

Q. . . . Was this the first time this happened or was there another time before this?

A. I don't remember if this was the first time, but I do remember it happening many times.

. . . .

Q. So I just want to clarify then, from 2007 to 2009, did any type of sexual abuse occur between you and [Defendant]?

A. Yes.

Q. Do you recall how many times?

A. Not exactly.

Q. More than once?

A. Yes.

. . . .

Q. Okay. And [this is] your first clear memory?

A. Yes.

Q. When you were interviewed by Sergeant DeSantis, did you describe for him all the events that happened from

2007 to 2009?

A. No.

Q. Why not?

A. Because I blocked it all away.

. . . .

Q. . . . If you don't remember specific details, that's fine, but what I'm asking is from this incident in 2007 to the next clear memory that you have in 2010 did the sexual abuse stop?

A. No.

Q. So from this incident in 2007 up until your next clear memory in 2010, do I understand you correctly the sexual abuse continued, you have just blocked out specifics about those?

A. Yes.

Upon its determination that this evidence was admissible to show Defendant's plan, intent, or scheme—in that the acts were sufficiently similar and not so remote that the probative value of the evidence outweighed any prejudicial effect—the trial court allowed S.M. to testify before the jury regarding these uncharged acts of sexual abuse.

**A. Standard of Review**

Rules of Evidence 404(b) and 403 have different standards of review, which on appellate review require "distinct inquiries." *State v. Beckelheimer*, 366 N.C. 127, 130, 726 S.E.2d 156, 159 (2012). If the trial court has made findings of fact and conclusions

of law regarding its Rule 404(b) ruling, then "we look to whether the evidence supports the findings and whether the findings support the conclusions. We review de novo the legal conclusion that the evidence is, or is not, within the coverage of Rule 404(b)." *Id.*

This Court then reviews the trial court's Rule 403 determination—whether the danger of unfair prejudice substantially outweighs the probative value of the evidence—for abuse of discretion. *Id.* "The balancing of these factors lies within the sound discretion of the trial court, and the trial court's ruling should not be overturned on appeal unless the ruling was manifestly unsupported by reason or was so arbitrary that it could not have been the result of a reasoned decision." *State v. Thaggard*, 168 N.C. App. 263, 269, 608 S.E.2d 774, 779 (2005) (cleaned up).

**B. Analysis**

Defendant first contends that the trial court erroneously concluded that "the evidence of uncharged conduct beginning in 2007 was admissible to show [Defendant's] 'plan, intent, or scheme' in abusing young girls." In addition, Defendant argues that "the admission of the evidence was highly prejudicial and outweighed any probative value under Rule 403."

Rule 404(b) of the North Carolina Rules of Evidence provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." N.C. Gen. Stat. § 8C-1, Rule 404(b) (2023). Rule 404(b) "is a clear general rule of *inclusion*," and thus "such

evidence is admissible as long as it is relevant to any fact or issue other than the defendant's propensity to commit the crime." *Beckelheimer*, 366 N.C. at 130, 726 S.E.2d at 159 (emphasis added) (cleaned up). Specifically, evidence of prior bad acts is relevant and admissible for purposes other than to show the defendant's criminal propensity, including as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident." N.C. Gen. Stat. § 8C-1, Rule 404(b).

Upon determining that evidence is admissible under Rule 404(b), "the trial court must balance the danger of undue prejudice against the probative value of the evidence, pursuant to Rule 403." *State v. Carpenter*, 361 N.C. 382, 389, 646 S.E.2d 105, 110 (2007). Rule 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C. Gen. Stat. § 8C-1, Rule 403.

Our courts have "liberal[ly] . . . allow[ed] evidence of similar offenses in trials on sexual crime charges." *State v. Frazier*, 344 N.C. 611, 615, 476 S.E.2d 297, 300 (1996). "The test for determining whether such evidence is admissible is whether the incidents establishing the common plan or scheme are sufficiently similar and not so remote in time as to be more probative than prejudicial under the balancing test of . . . Rule 403." *Id.* at 615, 476 S.E.2d at 299.

"[P]rior acts are considered sufficiently similar . . . if there are some unusual facts present in both crimes[,]" although these facts need not "rise to the level of the unique and bizarre." *State v. Pabon*, 380 N.C. 241, 259, 867 S.E.2d 632, 644 (2022) (cleaned up). "[W]hen otherwise similar offenses are distanced by significant stretches of time, commonalities become less striking . . . ." *State v. Badgett*, 361 N.C. 234, 243, 644 S.E.2d 206, 212, *cert. denied*, 552 U.S. 997, 169 L. Ed. 2d 351 (2007). Nonetheless, our Supreme Court has "permitted testimony as to prior acts of sexual misconduct which occurred more than seven years" prior to the offenses for which the defendant was being tried. *Frazier*, 344 N.C. at 615, 476 S.E.2d at 300; *see, e.g.*, *State v. Penland*, 343 N.C. 634, 654–55, 472 S.E.2d 734, 745 (1996), *cert. denied*, 519 U.S. 1098, 136 L. Ed. 2d 725, *reh'g denied*, 520 U.S. 1140, 137 L. Ed. 2d 366 (1997).

In the case at bar, "the testimony in question tended to prove that [D]efendant's prior acts of sexual abuse occurred continuously over a period of [several] years and in a strikingly similar pattern." *Frazier*, 344 N.C. at 616, 476 S.E.2d at 300. Both S.M. and D.M. were elementary-school-aged children when Defendant began sexually abusing them. The record shows that both victims considered Defendant to be their stepfather, and that D.M. and S.M. were the only children living in the home not biologically related to Defendant. Defendant had unfettered access to both victims most evenings while their mother worked.

We conclude that "this evidence presents a classic example of a common plan or scheme." *Id.*; *see also State v. Shamsid-Deen*, 324 N.C. 437, 445, 379 S.E.2d 842,

847 (1989) ("When similar acts have been performed continuously over a period of years, the passage of time serves to prove, rather than disprove, the existence of a plan."). Thus, the 2007 conduct was "not too remote to be considered as evidence of [D]efendant's common plan or scheme to sexually abuse female family members, including the victims here." *Frazier*, 344 N.C. at 616, 476 S.E.2d at 300.

Based on the similarity of the allegations and the temporal proximity, we conclude that the trial court admitted S.M.'s testimony regarding Defendant's uncharged acts for a proper purpose pursuant to Rule 404(b): to show a common plan or scheme.

Upon careful review, we also conclude that the trial court did not abuse its discretion in its Rule 403 analysis. The court acknowledged that the admission of this testimony would be prejudicial to Defendant; nevertheless, it determined after its full analysis that "the probative value outweighs any prejudicial effect[.]" Therefore, it is plain that "the trial court was aware of the potential danger of unfair prejudice to [D]efendant[.]" *Beckelheimer*, 366 N.C. at 133, 726 S.E.2d at 160 (citation omitted). "The trial judge first heard the testimony of the 404(b) witness outside the presence of the jury, then heard arguments from the attorneys and ruled on its admissibility . . . ." *Id.* at 133, 726 S.E.2d at 160–61. Moreover, the court only admitted "a limited amount of testimony as it relates to the prior act[s,]" which indicates its "careful consideration of the evidence." *Id.* at 133, 726 S.E.2d at 161.

Therefore, the trial court did not abuse its discretion in concluding that the danger of unfair prejudice did not substantially outweigh the probative value of the evidence.

Defendant has failed to demonstrate that the trial court erred by admitting the challenged testimony concerning his uncharged sexual abuse of S.M. Accordingly, Defendant's argument is overruled.

## II. <u>Motion to Dismiss</u>

Next, Defendant argues that "[t]he trial court erred in denying [his] motion to dismiss the indictments regarding D.M. because the State failed to produce substantial evidence to prove the dates of the alleged offenses" or, in the alternative, "because there was a fatal variance between the indictment[s] and the proof at trial" with regard to the dates of the alleged offenses.

### A. Standard of Review

This Court has held that "any fatal variance argument is, essentially, an argument regarding the sufficiency of the State's evidence." *State v. Gettleman*, 275 N.C. App. 260, 271, 853 S.E.2d 447, 454 (2020), *disc. review denied*, 377 N.C. 557, 858 S.E.2d 286 (2021). Accordingly, "we employ de novo review." *State v. Tarlton*, 279 N.C. App. 249, 253, 864 S.E.2d 810, 813 (citation omitted), *appeal dismissed and disc. review denied*, 379 N.C. 684, 865 S.E.2d 846 (2021).

### B. Analysis

Defendant contends that the trial court erred by denying his motion to dismiss because the State failed to present evidence that the offenses occurred within the

time period alleged in the indictments, that is, during the period from 1 January 2016 to 31 December 2016. Defendant notes that "[i]t is undisputed that D.M. was born [in] 2005[,]" and that D.M. testified that the offenses "occurred during a period when she was nine years old." Defendant then argues that "D.M. would have been nine years old in 2014–2015, not 2016," and consequently, "the State failed to prove that the offenses occurred during the date range specified in the indictment[s][.]" Accordingly, he maintains that the trial court erred by denying Defendant's motion to dismiss.

A variance between an indictment and the evidence produced at trial "is not material, and is therefore not fatal, if it does not involve an essential element of the crime charged." *Id.* (citation omitted). "Generally, the time listed in the indictment is not an essential element of the crime charged[,]" *State v. Stewart*, 353 N.C. 516, 517–18, 546 S.E.2d 568, 569 (2001), and "the State may prove that it was in fact committed on some other date[,]" *State v. Whittemore*, 255 N.C. 583, 592, 122 S.E.2d 396, 403 (1961). "Statutory and case law both reflect the policy of this jurisdiction that an inaccurate statement of the date of the offense charged in an indictment is of negligible importance except under certain circumstances." *State v. Hicks*, 319 N.C. 84, 91, 352 S.E.2d 424, 428 (1987). Nonetheless, "a variance as to time becomes material and of the essence when it deprives [the] defendant of an opportunity to adequately present his defense." *Stewart*, 353 N.C. at 518, 546 S.E.2d at 569 (cleaned up).

In cases involving sexual assaults of children, our Supreme Court has explicitly relaxed the temporal specificity requirements that the State must allege. *State v. Burton*, 114 N.C. App. 610, 613, 442 S.E.2d 384, 386 (1994). "Judicial tolerance of variance between the dates alleged and the dates proved has particular applicability where . . . the allegations concern instances of child sex abuse occurring years before." *Id*. (emphasis omitted). Thus, "a child's uncertainty as to the time . . . the offense charged was committed shall not be grounds for [dismissal] where there is sufficient evidence that the defendant committed each essential act of the offense." *Hicks*, 319 N.C. at 91, 352 S.E.2d at 428 (cleaned up). Because "some leniency surrounding the child's memory of specific dates is allowed[,]" "[u]nless the defendant demonstrates that he was deprived of his defense because of lack of specificity, th[e] policy of leniency governs." *Stewart*, 353 N.C. at 518, 546 S.E.2d at 569 (citation omitted).

This policy of leniency is supported by our statutes. N.C. Gen. Stat. § 15-155 provides that "[n]o judgment upon any indictment for felony or misdemeanor . . . shall be stayed or reversed . . . for omitting to state the time at which the offense was committed in any case where time is not of the essence of the offense, nor for stating the time imperfectly[.]" N.C. Gen. Stat. § 15-155. Additionally, "[e]rror as to a date or its omission is not ground for dismissal of the charges or for reversal of a conviction if time was not of the essence with respect to the charge and the error or omission did not mislead the defendant to his prejudice." *State v. Blackmon*, 130 N.C. App. 692,

696, 507 S.E.2d 42, 45 (citation omitted), *cert. denied*, 349 N.C. 531, 526 S.E.2d 470 (1998).

In the instant case, Defendant does not demonstrate any prejudice to his defense arising from the variance in the dates of the alleged offenses. Although Defendant argues that his relationship with the girls' mother was volatile and that he frequently left the home, "Defendant did not assert an alibi defense regarding the dates of the [charged] offenses or rely in any other manner upon the dates in the indictments in preparing his defense." *State v. Poston*, 162 N.C. App. 642, 648, 591 S.E.2d 898, 902 (2004). "Under the general rule, any variance between the dates in the indictments and the evidence would, therefore, not be material." *Id.*

Accordingly, the trial court did not err in denying Defendant's motion to dismiss the indictments, and his arguments on this ground are overruled. *See id.*

## CONCLUSION

For the reasons stated herein, we conclude that Defendant received a fair trial, free from error.

NO ERROR.

Judges COLLINS and FLOOD concur.